STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. CHRISTOPHER CHRISTION, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 11, 1978—Decided April 24, 1978.

Before Judges HALPERN, LARNER and KING.

*Messrs. Sodowick, Richmond & Crecca,* attorneys for appellant (*Mr. Michael S. Sodowick,* of counsel).

*Mr. John J. Degnan,* Attorney General of New Jersey, attorney for respondent (*Mr. William F. Hyland,* former Attorney General of New Jersey and *Mr. Leonard D. Ronco,* Acting Prosecutor of Essex County, of counsel; *Ms. Jane H. Marter,* Special Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LARNER, J. A. D. Defendant was convicted on three counts of an indictment charging (1) conspiracy (*N. J. S. A.* 2A:98–1), (2) possession of lottery paraphernalia (*N. J. S. A.* 2A:121–3(b)) and (3) working for a lottery (*N. J. S. A.* 2A:121–3(a)). The court imposed two concurrent 12-month sentences to the Essex County Correction Center on (1) and (3); a three-month suspended sentence on (2), and a fine and probation.

Defendant assigns the following grounds for reversal:

Point I — The trial court erred in denying a motion for judgment of acquittal on the count which charges defendant with working for a lottery.

Point II — The court erred in admitting into evidence certain confiscated lottery materials because of deficiencies in the proof of chain of custody.

Point III — The conspiracy count should be dismissed.

It is necessary to recite some of the facts in order to determine the question raised by Point I.

On March 16, 1976 members of the City/County Strike Force were staked out on Doremus Avenue, Newark, focusing on an abandoned tire which had been the object of prior surveillance as a suspected numbers drop. They were armed with search warrants founded on prior activity observed at the abandoned tire which reasonably supported the suspicion that it was being used by defendant for drops and pickups of numbers slips.

During the stakeout defendant was observed approaching and leaning over the tire. The police arrested him and on examination of the tire found therein lottery slips wrapped in a newspaper which had not been there prior to defendant's arrival. A further search of defendant's car produced two additional lottery slips.

Defendant contends that the abandoned tire does not come within the ambit of *N. J. S. A.* 2A:121-3(a) which provides:

a. Knowingly engaged as a messenger, clerk, or copyist, or in any other capacity *in or about an office or room in any building or place* where lottery slips or copies of numbers or lists of drawings of a lottery, drawn or to be drawn anywhere within or without this State, are printed, kept or used in connection with the business of lottery or lottery policy, so called. [Emphasis supplied]

He cites *State v. Snow,* 149 *N. J. Super.* 276 (App. Div.), certif. granted 75 *N. J.* 17 (1977), as authority for the proposition that the abandoned tire on Doremus Avenue is not

"an office or room in any building or place" contemplated by the foregoing legislative enactment. In *State v. Snow, supra,* the evidence revealed that defendant was walking on a public sidewalk when apprehended in possession of lottery slips. We held that the foregoing section of the statute dealing with working for a lottery was "intended to deal with a building or place used in connection with a lottery business, and not to embrace indiscriminately each and every location where one in possession of lottery slips happened to be, including a public sidewalk, and where, even though that person might be part of an overall operation, the proofs established only the fact of possession." 149 *N. J. Super.* at 281–282.

The distinguishing feature between the *Snow* case and the case at bar is that the latter presents sufficient facts to support the conclusion that the abandoned tire was the "place where lottery slips were kept or used in connection with the lottery business." The proofs were not limited to the possession of slips on the person of defendant who happened to be walking along a public street.

As observed in *State v. Siebert,* 126 *N. J. Super.* 534, 537 (App. Div. 1974), *N. J. S. A.* 2A:121–3, with all its parts, constitutes a comprehensive scheme to prohibit all phases of a lottery operation. Under subsection (a) thereof the Legislature intended to criminalize conduct of one who engaged in working for a lottery business at any office, room, building or place. There is no requirement that the place consist of any particular type or description.

The statute should be construed broadly in the light of the criminal activity it was designed to control and in accordance with the clear and long-standing comprehensive policy against unauthorized gambling. [Citation omitted] Any other interpretation of the statute would effectively emasculate it and subvert the legislative intent. [*State v. Soto,* 119 *N. J. Super.* 186, 188 (App. Div. 1972)]

The mere fact that the entrepreneurs engaged in the illegal lottery business ingeniously conceive of unusual places for

drops and pickups should not insulate them from the impact of the criminal laws which inhibit working for a lottery. A tire under such circumstances is as much a place for carrying on the lottery business as any more conventional place that may be located in a building. As this court stated in *State v. Kuznitz*, 36 *N. J. Super.* 521 (App. Div. 1955):

Obviously, "bookmaking" as it is commonly understood may be carried on in as many different ways as human ingenuity can devise. The present case is but one of many systems resorted to by individuals employed in a nefarious business with the prime purpose of avoiding detection. The law reaches beyond the outer form and takes hold of the substance of the thing in issue, and consequently no dressing, however adroit, can make legal that which is illegal. [at 530]

We have also considered the arguments advanced under Points II and III and find them to be clearly without merit. *R.* 2:11–3(e)(2).

Affirmed.